**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN JOSE DIVISION**

| | |
|---|---|
| STEVEN TAORMINA, et al., <br><br> Plaintiffs, <br><br> v. <br><br> ANNIE'S, INC., et al., <br><br> Defendants. | Case No. 14-cv-02711-BLF <br><br> **ORDER GRANTING MOTION TO DISMISS WITH LEAVE TO AMEND; AND GRANTING MOTION TO STRIKE** <br><br> [Re: ECF 37, 49] |

Before the Court are (1) Defendants' motion to dismiss Plaintiffs' consolidated class action complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) and (2) Plaintiffs' motion to strike the supplemental declaration of Meaghan Banks-Innes filed in support of Defendants' reply to Plaintiffs' opposition to the motion to dismiss. The Court has considered the briefing and the oral argument presented at the hearing on March 26, 2015. For the reasons discussed below, the motion to dismiss is GRANTED WITH LEAVE TO AMEND and the motion to strike is GRANTED.

**I.   BACKGROUND**

Lead Plaintiffs Vladislav Kandinov and Enhanced Life Partnership bring this securities fraud class action on behalf of those who purchased stock in Defendant Annie's, Inc. ("the Company") between June 10, 2013 and June 3, 2014 ("the Class Period"). Consol. Compl. ¶ 1. The Company manufactures, markets, and distributes organic food products. *Id.* ¶ 2. It became publicly listed on the New York Stock Exchange on March 28, 2012 and traded under the ticker symbol "BNNY." Defendant John Foraker ("Foraker") was the Chief Executive Officer ("CEO") and a director of the Company during the Class Period; Defendant Kelly Kennedy ("Kennedy") was the Chief Financial Officer ("CFO") until November 12, 2013; and Defendant Zahir Ibrahim ("Ibrahim") was the CFO from November 13, 2013 through the end of the Class Period. *Id.* ¶¶ 16-

19.

Plaintiffs claim that Defendants' public statements and filings with the Securities and Exchange Commission ("SEC") contained false and misleading statements of material fact and omitted other material facts relating to (1) the Company's accounting practices regarding promotional incentives and (2) the adequacy of its internal controls over financial reporting. Consol. Compl. ¶ 22. Those claims are based upon the following allegations: the Company used promotional programs, targeted around the back-to-school and spring seasons, in which the Company offered its customers incentives such as price discounts, consumer coupons, volume rebates, cooperative marketing programs, slotting fees, and in-store displays. *Id.* ¶ 29. In its quarterly and annual financial reports filed with the SEC, the Company represented that it accounted for the cost of its promotional programs by estimating those costs and recording them as a reduction of sales. *Id.* ¶ 31. In fact, the Company's methodology failed to capture all trade promotion costs. *Id.* ¶ 32. As a result, the Company's financial statements were false and misleading because they failed to provide the Company's true net income. *Id.* ¶¶ 50, 56, 59, 65, 68, 74, 77, 83. The financial statements also were false and misleading because they represented that the Company's internal controls over financial reporting were reliable when in fact they were not. *Id.* ¶¶ 56, 65, 74, 83. The Company's accounting practices with respect to recognizing trade promotion costs violated generally accepted accounting principles (GAAP"). *Id.* ¶ 3.

The Company's misstatements and omissions were made public in a press release issued May 29, 2014, an earnings conference call later in the day on May 29, 2014, and SEC filings submitted between June 2, 2014 and June 14, 2014.[1] Consol. Compl. ¶¶ 84-104. In particular, Plaintiffs point to the Company's statements that: its historical methodology for estimating certain trade expenses had not taken into account trade promotional activities conducted by customers after quarter end but related to sales activities occurring prior to quarter end; the methodology had been revised; and the revision of the methodology had resulted in higher trade expenses that were

---

[1] The Court notes that a number of those disclosures occurred *before* the end of the Class Period, which is alleged to be June 10, 2013 through June 3, 2014.

reflected as a reduction in net sales. *Id.* ¶¶ 84-85, 88, 91. The Company stated that it did not consider the financial impact of the change in methodology to be material to any prior financial statements under accounting guidelines, but that the change in methodology resulted in audit adjustments and immaterial revisions to the Company's quarterly and year-end financial statements for 2012, 2013, and 2014. *Id.* The Company acknowledged that there was a "material weakness" in its internal control over financial reporting, and stated that it had taken remedial steps to address the issues that gave rise to the material weakness classification, including engaging an external audit firm to assist with the Company's internal audit and internal controls function, and establishing a controls committee that would include board members and senior management. *Id.* The Company also stated that its outside auditor, PricewaterhouseCoopers ("PwC"), would be resigning effective August 11, 2014 or upon completion of the Company's filing of its Form 10-Q for the period ending June 30, 2014, whichever was earlier. *Id.* ¶ 103.

    This class action was filed on June 11, 2014 and the operative Consolidated Complaint was filed on October 22, 2014. Plaintiffs assert claims for (1) securities fraud under § 10(b) of the Securities Exchange Act of 1934 ("Exchange Act") and Rule 10b-5 of the Securities and Exchange Commission ("SEC") and (2) controlling person liability under § 20(a) of the Exchange Act.

## II. LEGAL STANDARD

### A. Rule 12(b)(6)

    "A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted 'tests the legal sufficiency of a claim.'" *Conservation Force v. Salazar*, 646 F.3d 1240, 1241-42 (9th Cir. 2011) (quoting *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001)). When determining whether a claim has been stated, the Court accepts as true all well-pled factual allegations and construes them in the light most favorable to the plaintiff. *Reese v. BP Exploration (Alaska) Inc.*, 643 F.3d 681, 690 (9th Cir. 2011). However, the Court need not "accept as true allegations that contradict matters properly subject to judicial notice" or "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008)

1  (internal quotation marks and citations omitted). While a complaint need not contain detailed

2  factual allegations, it "must contain sufficient factual matter, accepted as true, to 'state a claim to

3  relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl.*

4  *Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible when it "allows the

5  court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

### B. Rule 9(b) and PSLRA

In addition to the pleading standards discussed above, a plaintiff asserting a private securities fraud action must meet the heightened pleading requirements imposed by Federal Rule of Civil Procedure 9(b) and the Private Securities Litigation Reform Act of 1995 ("PSLRA"). *In re VeriFone Holdings, Inc. Sec. Litig.*, 704 F.3d 694, 701 (9th Cir. 2012). Rule 9(b) requires a plaintiff to "state with particularity the circumstances constituting fraud. . . ." Fed. R. Civ. P. 9(b); *see also In re VeriFone Holdings*, 704 F.3d at 701. The PSLRA requires that "the complaint shall specify each statement alleged to have been misleading, [and] the reason or reasons why the statement is misleading. . . ." 15 U.S.C. § 78u–4(b)(1)(B). The PSLRA further requires that the complaint "state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind." 15 U.S.C. § 78u–4(b)(2)(A). "To satisfy the requisite state of mind element, a complaint must allege that the defendant[ ] made false or misleading statements either intentionally or with deliberate recklessness." *In re VeriFone Holdings*, 704 F.3d at 701 (internal quotation marks and citation omitted) (alteration in original). The scienter allegations must give rise not only to a plausible inference of scienter, but to an inference of scienter that is "cogent and at least as compelling as any opposing inference of nonfraudulent intent." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 314 (2007).

### III. DISCUSSION

Defendants move to dismiss the Consolidated Complaint for failure to meet the pleading requirements for both the § 10(b) claim and the § 20(a) claim. The Court indicated at the hearing that it would grant the motion to dismiss with leave to amend based upon the lack of adequate factual allegations on the key issue of scienter. The Court granted Plaintiffs until May 29, 2015 – approximately sixty days from the date of the hearing – within which to file an amended pleading.

1  Plaintiffs' counsel indicated that he understood the Court's comments and stated that he could
2  provide additional factual allegations. This order is intended to highlight the areas of primary
3  concern to the Court.

### A. Claim 1 - Section 10(b) and Rule 10b-5

"To state a securities fraud claim, plaintiff must plead: (1) a material misrepresentation or omission by the defendant; (2) scienter; (3) a connection between the misrepresentation or omission and the purchase or sale of a security; (4) reliance upon the misrepresentation or omission; (5) economic loss; and (6) loss causation." *Reese v. Malone*, 747 F.3d 557, 567 (9th Cir. 2014) (internal quotation marks and citation omitted). Defendants contend that Plaintiffs have not alleged facts adequate to satisfy the first two elements.

With respect to the first element, the "materiality requirement is satisfied when there is a substantial likelihood that the disclosure of the omitted fact would have been viewed by the reasonable investor as having significantly altered the total mix of information made available." *Matrixx Initiatives, Inc. v. Siracusano*, 131 S. Ct. 1309, 1318 (2011) (internal quotation marks and citation omitted). Based upon Plaintiffs' allegations, the Company's true net income for the relevant quarters, using the Company's revised methodology for recognizing promotional expenses, was approximately: 8.7% less than reported for the fourth quarter of fiscal year 2013; 7% more than reported for the first quarter of fiscal year 2014; 6% less than reported for the second quarter of fiscal year 2014; and 0.7% less than reported for the third quarter of fiscal year 2014. Consol. Compl. ¶¶ 50, 56, 59, 65, 68, 74, 77, 83. Defendants argue that those discrepancies are so minor that they would not have significantly altered the total mix of information, especially in light of other revisions to the Company's financials. "Determining materiality in securities fraud cases should ordinarily be left to the trier of fact." *SEC v. Phan*, 500 F.3d 895, 908 (9th Cir. 2007) (internal quotation marks and citation omitted). The Court cannot conclude as a matter of law that a reasonable investor would not have viewed the alleged discrepancies to be material.

With respect to the alleged misstatements regarding the adequacy of the Company's internal control over financial reporting and compliance with GAAP, Defendants argue that the statements are couched as opinions and thus that they must be analyzed in light of the United

5

States Supreme Court's recent decision, *Omnicare, Inc. v. Laborers Dist. Council Const. Indus. Pension Fund*, 135 S. Ct. 1318 (2015). In *Omnicare*, the Supreme Court, reviewing § 11 of the Securities Act of 1933, clarified the circumstances under which a company can be liable for statements of opinion contained in a registration statement. The Supreme Court held that "a statement of opinion is not misleading just because external facts show the opinion to be incorrect" so long as the opinion is honestly believed. *Id.* at 1328. The discussion of materiality in *Omnicare* was limited to the second prong of § 11 regarding omissions. Thus while the Court agrees with Defendants that some of the statements regarding the Company's financial controls were couched as opinions, the Court cannot conclude at this stage in the proceedings that the statements were not materially misleading. Plaintiffs may amend to address the concerns raised in *Omnicare*.

Turning to the second element, scienter, the Court finds Defendants' factual allegations to be inadequate. The Court agrees with Defendants that as presently pled this case is indistinguishable in all relevant respects from *Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 981 (2009). As noted at the hearing, the Court was surprised by Plaintiffs' failure to address Defendants' moving arguments based upon *Zucco* in their opposition to the motion to dismiss. The Court trusts that in amending their pleading, Plaintiffs will supply factual allegations that address the pleading requirements outlined in *Zucco*.

As in *Zucco*, Plaintiffs here rely heavily upon information obtained from confidential witnesses ("CWs"). However, while some of Plaintiffs' CWs are "described with sufficient particularity to establish their reliability and personal knowledge," *see Zucco*, 552 F.3d at 995, as in *Zucco* the statements reported by the CWs are not themselves indicative of scienter, *see id.* For example, while CW5 is described as Vice President of Finance and Accounting, reporting directly to Foraker and Kennedy, Consol. Compl. ¶ 38, CW5's statements that "Defendants Foraker and Kennedy had full knowledge of BNNY's accounting and finance controls," *id.*, are too vague and general to give rise to a strong inference that Defendants made false or misleading statements either intentionally or with deliberate recklessness. *See Zucco*, 552 F.3d at 998.

Nor do Plaintiffs' allegations regarding revised financials give rise to the necessary strong

inference of scienter. *See Zucco*, 552 F.3d at 1000 ("In general, the mere publication of a restatement is not enough to create a strong inference of scienter."). Plaintiffs do not allege any contemporaneous facts suggesting that the Individual Defendants believed at the time that the methodology used to account for promotional costs was inappropriate, or that the Company's internal controls were insufficient.

Plaintiffs' allegations regarding the resignations of Kennedy and PwC likewise are insufficient to suggest the requisite mental state. "Although resignations, terminations, and other allegations of corporate reshuffling may in some circumstances be indicative of scienter, . . . "[w]here a resignation occurs slightly before or after the defendant corporation issues a restatement, a plaintiff must plead facts refuting the reasonable assumption that the resignation occurred as a result of restatement's issuance itself in order for a resignation to be strongly indicative of scienter." *Zucco*, 553 F.3d at 1002. As the court observed in *Zucco*, "the resignation of KPMG as Digimarc's independent accounting firm a month after the restatement was issued is not surprising – it had just been partially responsible for the corporation's failure to adequately control its accounting procedures." *Id.* Plaintiffs have not alleged facts suggesting that PwC did not have a similar motive for resignation in the present case. They likewise have failed to allege facts suggesting a suspicious reason for Kennedy's resignation. *See id.* ("For other resignations occurring during the relevant time period, a plaintiff must allege sufficient information to differentiate between a suspicious change in personnel and a benign one.").

Nor do the Individual Defendants' stock sales suggest the requisite mental state. Although Plaintiffs allege that the Individual Defendants sold stock at "artificially inflated prices" during the Class Period, Consol. Compl. ¶ 142, Plaintiffs do not allege facts showing that those sales were "dramatically out of line with prior trading practices at times calculated to maximize the personal benefit from undisclosed inside information," *Police Ret. Sys. of St. Louis v. Intuitive Surgical, Inc.*, 759 F.3d 1051, 1063 (9th Cir. 2014) (internal quotation marks and citation omitted). With respect to Plaintiffs' allegations that Foraker and Kennedy were motivated to make the alleged misrepresentations in order to receive bonuses, it is unclear from the allegations in the Consolidated Complaint that they obtained substantially greater bonuses than they would have

1  absent the alleged misrepresentations.

2      The Court notes that Defendants' supplemental declaration of Meaghan E. Banks-Innes,
3  containing mathematical calculations regarding the bonuses, is the subject of a motion to strike
4  brought by Plaintiffs.  The supplemental declaration is procedurally improper, as it constitutes
5  evidence and/or additional argument.  The motion to strike the declaration likewise is procedurally
6  improper, as it was filed late.  Because the material in the declaration is inappropriate for
7  consideration on a Rule 12(b)(6) motion, the Court hereby GRANTS the motion to strike despite
8  the fact that it was not timely filed.

9      In summary, the Court concludes that even viewed holistically as required under *Tellabs*,
10  Plaintiffs' allegations do not give rise to a strong inference of scienter that is at least as compelling
11  as an inference of nonfraudulent conduct.  Accordingly, the Court hereby GRANTS the motion to
12  dismiss with leave to amend.

13      **B.**    **Section 20(a) (Claim 2)**

14      Section 20(a) provides that "[e]very person who, directly or indirectly, controls any person
15  liable under any provision of this chapter or of any rule or regulation thereunder shall also be
16  liable jointly and severally with and to the same extent as such controlled person."  A plaintiff
17  suing under § 20(a) must demonstrate:   (1) "a primary violation of federal securities laws" and (2)
18  "that the defendant exercised actual power or control over the primary violator."  *Howard v.*
19  *Everex Sys., Inc.*, 228 F.3d 1057, 1065 (9th Cir. 2000).  Because Plaintiffs have failed to state a
20  claim for a primary violation of the securities laws, they likewise have failed to state a claim for
21  violation of § 20(a) of the Exchange Act.

22  **IV.**    **ORDER**

23      For the foregoing reasons, IT IS HEREBY ORDERED that:

24      (1)    The motion to dismiss is GRANTED WITH LEAVE TO AMEND;

25      (2)    Any amended complaint shall be filed on or before May 29, 2015; and

26      (3)    The motion to strike is GRANTED.

27  Dated:  April 16, 2015                                                                      _____
28                                                                            BETH LABSON FREEMAN
                                                                          United States District Judge

United States District Court
Northern District of California